Good morning, Your Honors, and may it please the Court. Kristen Bateman for the Consumer Financial Protection Bureau. I'd like to reserve five minutes for rebuttal. For years, Cashcall and the other defendants told consumers that they owed money that those consumers did not actually owe. That violated the CFPA's prohibition on deceptive practices, and based on the undisputed facts, the District Court agreed and held the defendants liable. For that violation, the Bureau sought a straightforward remedy, restitution of all the interest and fees that the consumers paid that the consumers did not actually owe. But the District Court denied that relief and let Cashcall keep the hundreds of millions of dollars that it collected that it had no right to collect in the first place. That decision was based on erroneous legal principles and should be reversed. And I can talk about that first before turning to the cross-appeal issues challenging. I do have a question for you. I just want to understand kind of the framing of this case. So the District Court granted summary judgment in favor of the Bureau on the liability of the head guy, right? The head guy and the companies, yes. And found that the head guy was reckless, correct? Correct. Then there's a bench trial and the District Court says that there was an insufficient finding of recklessness. Correct. So just stop right there. I'm trying to understand why the actions of the CEO, if the CEO was found for summary  Why was that imputed to the corporation? I just, I didn't really understand. I didn't see a lot in the briefing discussing this kind of... Disconnect? Yes. Can you help me walk through, am I missing something here? I'm not sure you're missing something. I have a hard time reconciling those two holdings as well. I think the District Court was absolutely correct to find that Mr. Redham was individually liable at summary judgment because the undisputed facts here show that he was at a minimum recklessly indifferent to the truth or falsity of these statements that Cash Cold made that consumers owed these amounts. And on appeal now, the defendants are saying, well, no, the undisputed facts didn't show that there's a dispute here. But that is all based on this misconception that recklessness is solely subjective. It's solely about what, as they put it, what Mr. Redham had in his head. But recklessness also includes an objective component. Someone is reckless if they act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known. And here, the undisputed facts show that at a minimum, Mr. Redham and also Cash Cold either knew the risks or those risks were so obvious that they should be known because counsel had made warnings from the get-go that became increasingly urgent because state after state after state had brought these regulatory enforcement actions. And because, you know, by August or September of 2013, the companies, you know, expressly recognized. Let me back up a second, though. Did the district court ever explain why it found summary judgment one way and then all of a sudden something different the next time? It did not explain that tension in its own rulings. But what it said after the trial on remedies was the thing that it kept emphasizing in its decision, where it ultimately found that the companies were not reckless, kept emphasizing, well, they got counsel. They got counsel. And counsel, you know, counsel made all these warnings. But counsel never revoked their opinion, their bottom line opinion that, oh, you know, we have a legal argument here. It's okay. These state laws don't apply. And so consumers owe this money. So once we got to the trial phase, the district court was putting near dispositive weight on the fact that they got counsel's advice and counsel gave these opinions and never revoked those opinions. But just so I'm clear, the recklessness goes to the civil penalties, not to the restitution? Or would you argue it goes to both? It does not go to the restitution, except for Mr. Reddam. He can't be liable. And it is possible that the reckless finding could have applied to the civil penalties at a certain point, meaning just because he was reckless doesn't mean that there was recklessness on day one. It could have crept in. I mean, that seems to be the problem here is that over time, it became increasingly untenable to stick by these legal, you know, opinions that he'd gotten. Right. I do think it became increasingly untenable over time. I would note that at the beginning of our period, our claims cover, our claims began at the end of July of 2011. By August of 2011, there'd already been four regulatory enforcement actions brought challenging this program. That's the exact number of. So if we assume that this recklessness were an error, that he just stuck to tier one in the civil penalties, would we need to go in and say, listen, we actually think it wasn't clear error up to a certain date. I don't know what that would be. So therefore, the district court at least didn't err in imposing tier one penalties for the first, say, two years. But for the last three years, we think the district court did err, and that should have been tier two. Would we send it back down then? Because the district court could still, there's no mandatory amount. He could order $1 for the, even under tier two, he could award more money under tier one than he does under tier two. So is it, I guess this kind of goes to the same thing, is it a futile effort to send it back down, or is it important that we say, hey, it was tier one for this period of time and tier two for this period of time? I do think that it's important. And so what you would do is you would remand it for the district court to impose the appropriate civil penalty within the range, and obviously the recklessness range goes up much higher, and there the district court would have to justify its reasons. Now, obviously the first time around, it thought that there were no mitigating factors, that the maximum penalty was warranted. And so I don't know if it would be open to the district court to suddenly find mitigating factors, but certainly very possible that it would be an abuse of discretion to impose a lower penalty than he has imposed now. Would the district court be able to go back and revisit what he awarded in the tier one? Meaning if we sort of like agreed that he didn't abuse his discretion for the first two years, is he stuck then with the penalty at the highest end of the tier one penalties that he awarded for tier one? And then he would only be able to revisit whatever date we said recklessness was clear? I think that would be right, Your Honor. Okay. Can I ask you a question about the basic liability finding and the role of state law in the analysis? And so just to take a hypothetical that's simpler than this case, suppose you have a non-bank lender, no interstate dimension, say they're in California, and they make a loan and it says, here's the interest rate, and the interest rate exceeds the legal usury rate in the state. Okay. And then the loan comes due and they send a letter saying, you owe us this money, please give us the money. In your view, is that a violation of the federal statute? It depends. It depends on whether, so the deception here was the cash cold told consumers that they owed money that they did not actually owe. So in these states, state law actually rendered the loans void. There are lots of states that have usury limits that don't make loans void as a result. So consumers actually still owe the amount even though it exceeds the usury cap. So in your hypothetical, it would turn on whether the consumer owed the amount. And the deception is in the failure to inform the consumer that state law provides that you don't really owe us this money? That would be a way of perhaps correcting the deception, but the deception is more straightforward. It's saying you owe me money when the truth is you don't owe me money. So I mean, suppose in coming back to the facts of this case, if they had sent all of the consumers a letter that said, we told you that your contract is governed by the law of the Cheyenne River Sioux Tribe, which has no usury limit. But in fact, if you look at the second restatement of conflicts, it's probably actually governed by the law of your state. Would that eliminate the problem? So there's case law about if you make a deceptive statement, and can you cure it? And there, if it actually, I'm not sure that in your hypothetical this would cure the deception, but if before cash call collected any money from the consumers, they had made it clear that the consumers didn't actually owe the money. And so, you know, then we could know that the consumers were paying it sort of out of a voluntary sense of obligation or something, as opposed to in response to these deceptive statements, then, you know, we wouldn't be here. But it does go to the, there's sort of a sliding scale, not only on kind of the civil damages that we were talking about before, but also on the liability. Because at some point, I mean, it turns out to be wrong. But on day one, was that deceptive? I'm sure your position is it was absolutely deceptive on day one. Absolutely. And a mistake of law is not a defense. Mistake of fact is not a defense. Congress did not see fit to include either of those defenses in the statute. I get that. But businesses all the time make decisions based on risk analyses. And just because they end up being wrong at the end of the day, I'm not sure that that always exposes them to a consumer fraud claim. And that's what I'm struggling with here is at some point, it becomes untenable. And maybe here, there's a decent basis that on day one, it was untenable because you already, you're not drawn on a clean slate, you're kind of trying to transfer one position that already was found illegal, at least in certain states, with the bank hiring a bank to, okay, well, now we'll hire a tribe. And so maybe that supports that. But it does strike me that the liability, there's a sliding scale on how deceptive these statements were. A couple of points on that, Your Honor. First, it's not a sliding scale on good faith belief or anything like that on the liability. Defendants haven't argued that. That is not an issue in this appeal. They have two challenges to the deception finding, at least as far as the companies are concerned, and that is not one of them. And the basic principle just harkens back to mistake of law isn't a defense. Mistake of fact isn't a defense. But does it go into restitution? I read the district court to suggest that it sort of did play into the restitution analysis. I think that's a fair reading. And again, no, because that effectively reads a mistake of law or a mistake of fact defense into the statute where Congress did. Well, I don't think it reads it into the statute. Restitution is permissive. It's not required. Civil penalties is required. But restitution is permissive. And so it strikes me that the district court can take that into account for purposes of restitution. He sets a good case that says, look, I can't consider the legal claims, which are the excuse me, the legal memos that you received for purposes of liability. But I can for restitution. And there's a Ninth Circuit case that suggests that he was right on that. No, I don't think he could consider that, Your Honor. And here's why. It's well established that even if we're talking about sort of discretionary and equitable remedy, a court cannot deny that sort of relief for reasons that are incompatible with the underlying statute. And you're talking about the Pantron case. Pantron, Albemarle paper. Albemarle paper is perhaps the most on point there. That's the Supreme Court case. The lower court had denied an equitable remedy on the ground that the defendant... The problem that I have with that reasoning, because I haven't looked at that second case, but I don't think Pantron supports it, which maybe is what you're suggesting here. It doesn't support it that strongly because if you took that position, then you'd always award restitution. It would almost become mandatory because the purpose, of course, is to protect the consumer. And so you'd always have to give restitution. The Supreme Court made a similar point in Mitchell. It said there's no doubt that the statutory purposes leave, quote, little room for the exercise of discretion to deny the relief. Even where the relief is a discretionary equitable remedy, the discretion that the court has is bound by the purposes of the statute. And here, Congress enacted a very broad remedial scheme that was designed to ensure that there could be full compensation for victims of unlawful practices. And restitution has two purposes. It's supposed to compensate the victims, and it's supposed to make sure that the wrongdoer has to give up the proceeds of the unlawful conduct. So here, looking to bad faith, is at odds with that. It is making, it's treating, this is the point that the Supreme Court makes in Admiral Paper, it's converting the restitution remedy into a punishment for moral turpitude, but that's not what restitution is about. And that's why it is not consistent with this remedy that Congress established to look to a defendant's good or bad faith. It is a little odd that you ask for $235 million in restitution and the district court says zero. I give you that. But part of what I think the district court was worried about, and he didn't state it this way, but was that he didn't feel like you, the government, met your burden here. And the government's position seems to be, hey, all we had to do was count up how much revenue they received and that's it. That was all our burden was. But I don't read our cases to suggest that. If you read Commerce Planet, it says you have to reasonably approximate unjust gains. And that is defendant's net revenue. And that would put the government with the duty to go in and say how much was paid by the consumers, which you did, minus the refunds and chargebacks, which I didn't perceive the government to have done. And the government's position seems to be, hey, we're just going to tell you net revenues. We don't know about the rest of it. That's their job. Cash calls job to come back and rebut. And I'm not sure that that's my reading of the case law. We did provide for the refunds. So the $235 million cuts out refunds and chargebacks. Yes, it does. And you can see that in excerpts of record tab 280-1. That's where we provided the information about the refunds. So the $235 million figure that we requested, that was all the interest and fees that Cash Call collected, minus the amounts that they had already refunded. Under state law, most of these contracts were void, as I understand it. All of them, yes. Well, that's not what the district court says. He says most are void or have to be revised. There's a difference there. So I think that's one of the things that the district court was struggling with, is the state law is not uniform on this. But I have a more fundamental question than that. What does it mean that they're void? If I give you a $3,000 loan and I'm charging you 150% interest, and state law says I cannot do more than 10%, and you say, oh, this contract's void, do you get to keep, as the consumer, the $3,000 that I've given you, or do you have to give that back? That is a question of state law. In these states, these 13 states that issue in this action, the loans were absolutely void. The consumers had no obligation to pay anything. Well, but did they have to give back the initial loan? Under these state laws, no. Or at least for most of the states, they didn't have to give back the principal either. For some states, they did also have to give back the principal. So you're saying I could go out and find somebody who's charging a high, I mean, this is actually interesting. I could go find somebody who's charging me higher interest than is permitted, and I could go get the highest loan that they would give me, and then I could write them a letter and say, I'm not going to pay you back, and tough luck, you can't do anything about it. Thanks for the $10,000. If you're in one of those states, then it seems like that is the state, well, two things. That may be the judgment that the state legislature has reached separately. There may be defenses like unclean hands, and the hypothetical that you posit. But if you were an innocent consumer, then yes, that is the judgment that the state legislatures have made. And so we are just taking that state law as a given, and under these state laws, I want to make clear an issue here, if there's no dispute, that if these consumers' home state laws apply, these loans are void and consumers have no obligation. That's not in dispute in this case. Do you want to reserve? Yes, please. All right. Thank you. Good morning, your honors. I want to start on the restitution and just say that the CFPB got the exact trial it asked for. It agreed with the legal framework of that trial. It decided its own trial strategy on how to prove its case, how to convince the district court to award restitution. It was allowed to put on any witness it wanted to. It was allowed to cross-examine the defense witnesses without limitation and none of its evidence was precluded from omission. After all of that, in a bench trial where the court is making findings of fact and the parties have agreed it is up to his discretion, the CFPB lost its restitution bid. The decision was based on findings of fact for which there's no clear error and the district court's sound discretion. The order denying the restitution should be the government's now saying there was clear legal error and that some restitution, it is sort of hard to understand how, I read it to be that the district court was a little bit frustrated that the government came in and said $235 million is what we want, we're not deviating from that and he sort of said that's just too high. But there's a big difference, there's a lot of room between zero and $235 million and so that's the concern that we I think that we need to look at is was the district court, did he abuse his discretion, commit clear legal error in saying we're just not gonna, I'm just not gonna award any restitution at all? Well I think there's steps to be initial, your honor. I think that first the court is being asked to sit in equity and decide is restitution appropriate in this case? The CFPB agreed with that framework, we agreed with that framework and the district court did. But why wouldn't it be? If consumers were defrauded, why isn't restitution the natural remedy? Well sitting in equity and I don't think that the court concluded that they were defrauded. I don't think they were. I think that they concluded that they were deceptive and I think your honor has already identified along the path of and district, along the path of time, the district court decided when he issued his summary judgment order, which he recognized at the trial phase, that our clients did not know. They had legal counsel but they did not know that they were acting deceptively under the CFPA until the district court's order. So when we get to the trial and everyone agrees. Back up, is this the first, but this isn't the first judicial award. You don't, by the time the district court's order came down, what are you referring to? The district court's order in this case? Because you had already settled or the cash call had already settled with several states suggesting that they had been violating the law prior to the district court's order. Well I don't, I don't agree that that's the settlement, the reason for the settlement. I think that in any settlement, I think that you have an enforcement action has commenced. Both the state governments are deciding what they think is appropriate to give back to the consumers and we're deciding to end the litigation. So I don't think it was conceded. I'm not pushing back on your statement that until the district court's order here, they had no idea that what they were doing was illegal. Well I don't think they did. To say they had no idea, obviously they had hired counsel to advise them whether it was legal or not. Their counsel along the way said we think this is going to be defensible. But until 2013 and then they withdrew that opinion and you stopped issuing loans under this arrangement? Your what happened was... That's because you fired him before they could withdraw it. No, I think that I think that they consistently held that that was the opinion. I think it got to a point and I think the record shows that the Western Sky program was having an effect on the business's mortgage business. They heard from Fannie Mae, they heard from Franny Mac and they decided we're gonna pull the plug. There's also a lot of civil actions, a lot of civil enforcement actions from the states. That's not a concession or a recognition that this is illegal. They continued to believe that it was that it was legal. Well in those, as I understand it, in those seven states where they settled and maybe this was just part of the settlement, they agreed not to continue to collect on the outstanding loans. So that comes pretty close to a concession. As part of a settlement. I understand. And it may not be in the record but we've all been around long enough to know that states pile on. You get one state, you get one CFPA who says, hey we've got this, you know, theory we're gonna roll out. The next thing you know, every state is piling on. Even ones without these usury statutes. So in some states did not pursue any enforcement action. Can I go back to what you said a moment ago? I'm looking at ER 316-10 from Mr. Reddam's trial and he said they seemed to be saying that they were withdrawing at some point their opinions. Next answer, he was upset that she was backtracking on the things that she had said. So am I misunderstanding that? My understanding of the record, your honor, is that while they looked like they were beginning to backtrack, once the next thing you know you've got all these enforcement actions and they're piling up and and there's a malpractice suit which is not a part of this, but our client begins to think, hey wait a minute, you're backing up and you're fired. I don't know, the record is not clear that they were going to retract it or later on they said no, they said we retract this, this has been illegal all along. That was not the evidence in the record. And as well, there were other people who had weighed in. There were other things forming the third-party counsels had looked at this and including several professors. And I think the findings of fact at the restitution trial confirmed that in the district court's mind. It looked at all this evidence. No one called Miss Callaway. It was our witnesses and we were asked and that's that's the record and the court made findings of fact based on the testimony. I did want to go back to make a couple points to be helpful to the court. One, the state model was not held to to be a problem until 2016. That that is in the record and there were filings that were started before but it wasn't until 2016. So and on the reckless point, I think it's a it's a it's a great question. Back up, the state model with regard to the with regard to the tribes or the state model with regard to the hiring the bank? I'm sorry, the banks. I thought there was a 2014 West Virginia Supreme Court case. There was, you're right, you're right, your honor. There was. We disagreed with that and that was in West Virginia which is not a subject state. But then also I also think that in 2016 was when the Maryland came. So I do apologize, your honor. It was 2014 but that is that is long after. And that model is different. By the way, yeah, I that that to me just supports this idea that this should be a sliding scale. You know that at some point it goes from tier one to tier two. I mean how do you get how do you get around this to say that Redham, if I've said the name right I hope, but that he he was reckless for purposes of liability but never reckless for purposes of tier two civil penalties? Well I think the distinction and and I think everyone in the courtroom has to look at it twice but I've I've landed on this that for liability the court is looking at whether he was recklessly indifferent to the truth or the falsity of the misrepresentation. And that that's the reckless standard he's looking at for liability. Right and so I know you think he's wrong but he found that that he was reckless as to the truth of the representation. Right. Because he wouldn't. Yeah. So how does that translate? Because because he decided that what was actually in his mind the court wasn't going to consider which was based on his legal opinion. On an issue of law we ask he's expecting a person to remove everything that the lawyers have put into his head. So we disagree with that. But on the reckless at the at the summary judgment stage versus the trial that the test at the for liability is at the summary judgment stage reckless indifference to the truth or falsity of misrepresentation. At the at the CMP stage the civil money penalty stage that question is whether they recklessly violated the statute. I think that's what the court was trying to figure out. Although he said nothing about anything that you just said. Well he's basing the standard. You're right he didn't articulate the difference. Nor did the parties in in the briefing it really draw that out. But I think those are distinctions. They're they're reckless in his conduct at the liability stage and then it's that you recklessly violated the CFPA. I recall that the court the that that he could not have known until the summary judgment stage that it was back recklessly violated the CFPA. So that's why I think that there are two differences. And in it and if we're going to collapse those anyway which I don't think is the right read. I think what I just said was the right read. But if we're going to collapse them then I think that you would weigh on the on the side of the trial where the judge heard witnesses and got declarations and put witnesses on the stand and there were cross-examination and then he came and said well he he wasn't reckless compared to let's go back to the summary judgment stage where there's just some papers filed in a very minimum standard. I think you would find that the findings of fact are the ones that are strong. What if we believe that he was reckless at some point even for civil penalties? Would we try and come up with a date at which we think he was reckless or would we say listen we don't know when he became reckless and it should have transferred from tier 1 to tier 2 and we'd remand it to the district court to make that determination but just say look at some point whether it was 2013, 14, 15, 16 by Maryland whatever it was at some point he became reckless and we're going to demand that the district court find that he was reckless on some date. I don't think so. I think that. You think we should just do it ourselves and figure that out. The exact opposite. I don't think it's appropriate for this court. I think that this court is when it's looking at the civil money penalty and whether someone it was reckless that is a factual finding for which there I don't think there's clear error and I think if you were to find there were a clear error I don't think you can find it on this record. No I understand that I'm asking I know I'm putting you in a tough spot assume that we believe that he was reckless at some point do you think it's our job to figure out on what date he demanded to the district court to make that find? I don't think it's this court's role to make findings of fact so that feeds to my answer before but I think the court made its findings of fact and there is no clear error and it was his discretion. Can I ask you to address the underlying liability question and the role of state law in the analysis and why isn't it a need to pay you money when under the governing law which might be state law in some cases they don't in fact owe you money? Well I think you have to I think you have to start with whether or not Congress has I think this is part of a trail and I'll get to your question your honor I think you start with the principle that the Congress has to speak clearly if it wants to reach into state law. I think it has to be expressed I think that's bond too and and I think that there is no such language here as a matter of fact there there is opposite language. The usury prohibition prohibition which we we were able to argue on the papers but we never got to argue before Judge Walter I think it speaks very clearly that Congress did not intend it did not want the CFPB going in and doing anything with usury limits. It says no provision of this title it's not just talking about rulemaking it's saying no provision of this title should be construed as conferring authority to establish a usury limit. So I think Congress has not only not given them to reach in down to state law but I think they've also said don't go in this area. Now the reason it's not deceptive is because there is no independent basis no no independent basis that they've said is deceptive. They've used the words and said well it violates the usury standards in these 13 states so it's void and thus we'll say it this way we'll say it's unlawful to collect money you didn't owe. The entire theory rests solely on the usury statutes that's why we don't see a lawsuit and we don't see the complaint challenging other states. They're only picking the states that they can rely on those laws for. So deception it seems to me is creating an impression in someone's mind that's that's not true and the reason that the impression you know in this case the impression is you owe us the money and the reason that that's not true might be you know some fact that they don't know or it might be the operation of some principle of federal law or some state law and I don't see why there's what why is state law special that when the the untruthfulness is created by state law we don't get to look at it. I mean I think that I think that's our position. The Congress did not say anything that violates state law you can say is unlawful or it's unfair or it's deceptive or abusive. I think if it was going to define those terms which are deceptive, unfair, abusive and it intends for the government to go down and reach across the the river of federalism and say we're going to bring up all the state law so if you can find this then you can say well it's deceptive to say something unlawful. I think it's as simple as that. I think it's simple as you're relying on state law for your deceptiveness and I don't and I don't think that the statute calls for that. As a matter of fact I think the statute says unfair, deceptive or abusive or practice under federal law. Now in the CFPB's brief they said well under federal law, this is under federal law because it's deceptive which means under 5531A their reading is unfair, deceptive or abusive or practice under federal law which includes the law we just gave you. That doesn't make any sense to me. I think the reading of the statute is under federal law. You need to find something that's deceptive. They never argued that it was deceptive for another reason. That the terms were in a holograph or the terms were hidden or they weren't told. Why isn't this like the Currier case from the Sixth Circuit? I know that was a different statute but a similar prohibition and there they said if you try to collect a debt by doing something that you're not allowed to do under state law, it's not that the violation of state law is per se a violation of federal law but it can be the basis for finding a violation. Well I think this case is more like the cases the Sixth Circuit's talking about and reason being is Currier held that or those cases held that a violation of state law is not a per se violation that the FTCPA. So let's understand that. The FTCPA does not say every state violation and the particular provisions that are at issue in those FTCPA cases allow for state law. Section 1692 F1 says prohibits quote the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law. I think that invokes state law. It certainly doesn't say federal law like what we have in the CFPA. And 1692 E5, threat to take an action that cannot be legally taken. I think that's broad enough. It certainly isn't limiting. But those two provisions, provisions like that are not at issue with the CFPA. We're back to unfair, deceptive, or abusive under federal law. So I did want to go back and talk briefly about Alva Marley paper. Can I ask a question along those lines? Well maybe I'm hitting the other point, but if we assume that some restitution was warranted here, and I know that's the point you wanted to just address, but under Commerce Planet we've said that the government's duty is to present evidence that reasonably approximates unjust gains. Do you agree that the government's evidence, the 235 million dollar figure, was the amount that was paid by consumers minus refunds and chargebacks? If you use those words, yes. But I don't think that that's, I don't think that's accurate. I don't think it, I don't think it reflects to say that they showed up and put up the net revenues. First I would say that I think the case law, I think Gordon and Commerce Planet and all those cases, I think they mean it when they say you must reasonably approximate the defendant's unjust gains. There's a lot packed into there. You must reasonably approximate. That's not just show up for some reason. I agree with you if I was reading that, but when you read the cases it then defines it as the amount paid by consumers minus refunds and chargebacks. Well I think what it does is it says you have to reasonably approximate the defendant's unjust gains and it says that you may be able to do it by by showing revenue. It doesn't say it always is the case. What would you do, assuming that the district court said, hey restitution's warranted here and the government put on 235 million dollars, what would you do to discount that figure? We did do that, as a matter of fact, and we and we pointed out numerous things that were problematic and not we're particularly talking about a matter of equity. I think that that test, reasonable approximate unjust gains, is under an equitable relief umbrella and it's saying unjust is a part equitable. So that test in most cases, yes, where someone is selling a product that isn't the product. Right, rhinestones for diamonds. There's no debate that equity should fall in that favor and there's no debate that all the money should be given back. The rhinestones are worthless. But your honor, I know I'm about to cross the sidewalk if I could just finish. Rubicon can be crossed here. Okay, we did at the trial contest. It was 235 at trial, now it's 197. We essentially conceded there's a pardon error, but through our witnesses in the cross-examination of their loan witness, we pointed out multiple problems with the now 197. The numbers didn't account for the payment status of the loans. It didn't count for windfalls. The scenario of we gave $3,000 and the borrower may pay back $300. They want to call it interest and so $300 in interest needs to be given back. That's not equity. And remind us, we're not... Why isn't it equity? Because, I mean, you guys set, your clients set up that plan where of that $300, I'll bet you 90% of it is interest payment. I mean, that's what you get when you get 150% interest rate loan. I'm sorry, your honor. I think that requires them to be enforcing the usury statute. If they're going to go straight to, hey, the remedy for the usury statute is this, then they're enforcing the usury statute. They've disbanded that. They've said, we're not doing that. Well, but there's at some point, I mean, we're talking about restitution now and at some point, it seems to me you go in and you say, listen, gave a $3,000 loan. We're going to recalculate this at some reasonable rate. Agreed. And that's not what they did. And what would that amount have led to? If that analysis had gone through, was that like $90 million? I don't know what the number is. It would be varying amounts based on all the factors. So there's that. That's a point that they didn't account for. And again, I think it's important to say we're sitting in equity. I don't think it's fair to say we didn't know that the loan wasn't enforceable. We had advice. Otherwise, we get to a point where we say, ta-da, it's deceptive, and they weren't enforceable, and the person gets $200. So I know we're on borrowed time. I do have one more question, though, and maybe others do as well. But what's the practical impact here? Does CashCal have $200 million? They can even pay this back. Does REDM have $200 million? I can't answer. CashCal, I think it's probably easy to say it does not. I would be shocked if Mr. REDM did. I mean, the idea... The $197 million, the $243 million, was walked back at the trial. I think that's important to understand. It's not as simple. And I gave you a couple examples. I have a whole list. I agree. No, I give you that. But I think the trouble is, should it be zero? And that is difficult, I think. And so if it's not zero, then what do we do with it? And part of that seems to me to be, what even makes sense? I mean, if we're just talking about random figures that nobody can ever pay, does it really matter? I mean, is there $10 million that's accessible? Well, that's covered by the civil penalties. Is there $50 million that's accessible? I mean... A lot has been paid back already through all these state settlements. So... What is that, like $30 million? No, much more than that. I don't know the exact number off my head, but it's much, much more. But that was already discounted off of the... They took it off, but those were also settlements. Some of them were intended to resolve the matter. I mean, these state AGs are sitting there saying, we've got to get what we think is fair and reasonable for them. The $10 million, I mean, they lost money. I think it's important to understand that. Cash Call lost money on the ordeal. And then this $10 million, that's not a small amount of change. That's a lot of money. That's a lot of money. And a lot of these borrowers wanted these loans. And some of them were repeat borrowers. And a lot of them didn't pay back as much as even they took. So there's a whole list of things that were not configured that do play into the equity. Thank you, Counselor, very much for your argument. Way over. Thank you so much. No, it's all right. Thank you. A few points on the restitution amount. The proper amount of restitution is the interest in fees that the consumers paid that they didn't owe. Those are all unjust gains because they were amounts that Cash Call told them they owed when they didn't know it. The defendants are claiming that they lost money on this endeavor, but they lost money because it was an expensive business. And it's well established that you don't get to deduct things like your overhead costs, your cost of hiring employees, your cost of obtaining financing. That would effectively shift your cost of doing business onto the consumer. What does it mean? Say you have a $200 million judgment. I get it. We're defending the principal here. It's perhaps a message to future actors. But does the government really think they can pay back $200 million? At trial, they expressly disclaimed any reliance on seeking mitigation of the civil penalty amount based on lack of financial resources. So they can pay $10 million or $50 million? I don't know what their finances are, but certainly that would be something to figure out once the appropriate judgment is entered. On this bad faith question, bad faith is just not a basis for denying or reducing a restitution award because that is inconsistent with the purposes of restitution. The Supreme Court made that point in Albemarle paper. This court made that point in Fertz v. Malthor. Bad faith can be relevant in two ways. One, if you act in bad faith, that sort of shuts the door to equity. The court made this point in Albemarle paper. So if you act in good faith, that opens the door for other equitable considerations to come in and reduce an award. However, if you act in bad faith, you can't rely on any other factors. Bad faith is also a factor under the Act for civil penalties. The civil penalty provision of the Act expressly makes a defendant's good faith or bad faith a relevant consideration. So that does come into the remedial questions. It just does not come into restitution. I see I'm out of time. Do you have any more questions? Right on the money. All right, thank you very much, counsel, to both of you for your arguments in this case. I thought all the counsels today were very good, so I appreciate that. This matter is submitted, and we are in recess.
judges: Owens, Nelson, Miller